[No. S129852. Mar. 5, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
DWAYNE GILES, Defendant and Appellant.

834

**COUNSEL**

Marilyn G. Burkhardt, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Lawrence M. Daniels, Kristofer Jorstad, Susan D. Martynec, Joseph P. Lee and Russell A. Lehman, Deputy Attorneys General, for Plaintiff and Respondent.

Nancy K.D. Lemon and Timna A. Sites for California Partnership to End Domestic Violence as Amicus Curiae on behalf of Plaintiff and Respondent.

Douglas Beloof, Margaret Garvin, Kim Montagriff, Joanna Tucker Davis; Porter, Scott, Weiberg & Delehant and Laura J. Marabito for National Crime Victim Law Institute as Amicus Curiae on behalf of Plaintiff and Respondent.

## OPINION

**CHIN, J.**—In this case, defendant admitted that he killed his ex-girlfriend, but claimed that the killing was committed in self-defense. Over defendant's objection, the trial court admitted the victim's prior statements to a police officer who had been investigating a report of domestic violence involving defendant and the victim. The prior incident had occurred a few weeks before the killing. The victim related that, during that incident, defendant had held a knife to her and threatened to kill her.

■ Did defendant forfeit his right to confront his ex-girlfriend about the prior incident of domestic violence by killing her and thus making it impossible for her to be at the murder trial? Does the doctrine of "forfeiture by wrongdoing" apply where the alleged "wrongdoing" is the same as the offense for which defendant was on trial? Under that equitable doctrine, a defendant is deemed to have lost the right to object on confrontation grounds to the admission of out-of-court statements of a witness whose unavailability the defendant caused.

As explained below, we conclude that defendant forfeited his right to confront his ex-girlfriend when he killed her.

## FACTS[1]

A. *The shooting.*

Defendant dated Brenda Avie for several years. On the night of September 29, 2002, he was staying at his grandmother's house along with several other family members. Defendant was in the garage socializing with his niece Veronica Smith, his friend Marie Banks, and his new girlfriend, Tameta Munks, when defendant's grandmother called him into the house to take a telephone call from Avie. He returned to the garage and spoke to Munks, who then left.

Avie arrived at the house about 15 minutes later, after Munks had already left. She spoke with Smith and Banks in the garage for about half an hour. Smith went into the house to lie down and heard Avie and Banks leaving the garage together. A few minutes later, Smith heard defendant and Avie speaking to one another outside in a normal conversational tone. Avie then yelled "Granny" several times, and Smith heard a series of gunshots.

---

[1] As the relevant facts are undisputed, they are taken directly from the Court of Appeal's opinion.

Smith and defendant's grandmother ran outside and discovered defendant holding a nine-millimeter handgun and standing about 11 feet from Avie, who was bleeding and lying on the ground. Defendant's grandmother took the gun from him and called 911. Smith drove defendant away from the house at his request, but he jumped out of her car and ran away after they had traveled several blocks. Defendant did not turn himself in to the police and was eventually arrested on October 15, 2002.

Avie had been shot six times in the area of her torso. Two of the wounds were fatal; one was consistent with her holding up her hand at the time she was shot; one was consistent with her having turned to her side when she was shot; and one was consistent with her being shot while she was lying on the ground. Avie was not carrying a weapon when she was shot.

Defendant testified at trial and admitted shooting Avie, but claimed he had acted in self-defense. He explained that he had a tumultuous relationship with Avie and was trying unsuccessfully to end it. Avie would get very jealous of other women, including Tameta Munks, whom he had been dating. Defendant knew that Avie had shot a man before she met him, and he had seen her threaten people with a knife. He claimed that Avie had vandalized his home and car on two separate occasions.

According to defendant, he had a "typical" argument with Avie when she called him on the telephone on the day of the shooting. He told her Munks was at the house and Avie said, "Oh, that bitch is over there. Tell her I'm on my way over there to kill her." Defendant told Munks to leave because he was worried about the situation, and Avie arrived soon afterwards. Defendant told everyone to leave and began closing up the garage where they had congregated. Avie walked away with Marie Banks, but she returned a few minutes later. Avie told defendant she knew Munks was returning and she was going to kill them both. Defendant stepped into the garage and retrieved a gun stowed under the couch. He disengaged the safety and started walking toward the back door of the house. Avie "charged" him, and defendant, afraid she had something in her hand, fired several shots. Defendant testified that it was dark and his eyes were closed as he was firing the gun. He claimed that he did not intend to kill her.

Marie Banks testified that she had seen defendant and Avie get into arguments before. Avie seemed angry when she came to defendant's grandmother's house on the day of the shooting, and she talked to defendant for about half an hour until defendant told everyone to leave. Avie and Banks left together, but as they were walking away they saw Munks. Avie said, "Fuck

that bitch. I'm fixin' to go back." She walked back toward defendant's grandmother's house and Banks went home. Banks did not see the shooting.

B. *The prior incident of domestic violence.*

On September 5, 2002, a few weeks before the shooting, Officer Stephen Kotsinadelis and his partner investigated a report of domestic violence involving defendant and Avie. Defendant answered the door, apparently agitated, and allowed them to enter. Avie was sitting on the bed, crying. Officer Kotsinadelis interviewed Avie while his partner spoke to defendant in a different room. Avie said she had been talking to a female friend on the telephone when defendant became angry and accused her of having an affair with that friend. Avie ended the call and began to argue with defendant, who grabbed her by the shirt, lifted her off the floor, and began to choke her with his hand. She broke free and fell to the floor, but defendant climbed on top of her and punched her in the face and head. After Avie broke free again, defendant opened a folding knife, held it about three feet away from her, and said, "If I catch you fucking around I'll kill you." Officer Kotsinadelis saw no marks on Avie, but felt a bump on her head.

## RELEVANT PROCEDURAL HISTORY

The trial court admitted Avie's hearsay statements to Officer Kotsinadelis over defense counsel's objection. The court ruled that the statements were admissible under Evidence Code section 1370, which establishes a hearsay exception for out-of-court statements describing the infliction of physical injury on the declarant when the declarant is unavailable to testify at trial and the statements are trustworthy.

The jury convicted defendant of first degree murder (Pen. Code, §§ 187, subd. (a), 189)[2] and found that he had personally discharged a firearm causing great bodily injury or death. (§ 12022.53, subd. (d).)

The Court of Appeal upheld admission of Avie's statements to the police. Applying the doctrine of forfeiture by wrongdoing, the Court of Appeal held that defendant "cannot be heard to complain that he was unable to cross-examine Avie about her prior, trustworthy statements to law enforcement when it was his own criminal violence that made her unavailable for cross-examination." It noted that, although the issue of forfeiture by wrong-doing was not litigated below, evidence of Avie's hearsay statements was

---

[2] Unless otherwise stated, all statutory references are to the Penal Code.

admitted under a statutory hearsay exception that appeared to be valid at the time of defendant's pre-*Crawford* (*Crawford v. Washington* (2004) 541 U.S. 36 [158 L.Ed.2d 177, 124 S.Ct. 1354]) trial. Nevertheless, the court addressed the forfeiture issue because it was undisputed that Avie was unavailable to testify because of her death and that her death was the result of defendant's actions.

We granted defendant's petition for review to decide whether the Court of Appeal properly applied the forfeiture by wrongdoing doctrine.

## DISCUSSION

The confrontation clause of the Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

In *Crawford v. Washington, supra,* 541 U.S. 36 (*Crawford*), the United States Supreme Court held that the confrontation clause (as envisioned by the framers of the Constitution) bars the admission of out-of-court "testimonial" statements except when the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Crawford* overruled *Ohio v. Roberts* (1980) 448 U.S. 56 [65 L.Ed.2d 597, 100 S.Ct. 2531] (*Roberts*), which for 24 years provided the framework governing the admissibility of statements from witnesses who did not testify at trial. (*Crawford, supra,* 541 U.S. at pp. 61–68) *Roberts* had permitted the admission of hearsay statements of unavailable witnesses, without violating the confrontation clause, if those statements fell within a firmly rooted hearsay exception or contained particularized guarantees of trustworthiness. (*Roberts, supra,* 448 U.S. at p. 66.) Holding that hearsay rules and judicial determinations of reliability no longer satisfied a defendant's confrontation right, *Crawford* announced: "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." (*Crawford, supra,* 541 U.S. at pp. 68–69.)

Although *Crawford* dramatically departed from prior confrontation clause case law, it renounced only those exceptions to the confrontation clause that purported to assess the reliability of testimony. (*Crawford, supra,* 541 U.S. at p. 62.) The court noted that forfeiture by wrongdoing, an equitable principle, remains a valid exception to the confrontation clause: "[The *Roberts* test] is very different from exceptions to the Confrontation Clause that make no

claim to be a surrogate means of assessing reliability. For example, the rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds; it does not purport to be an alternative means of determining reliability. See *Reynolds v. United States*, 98 U.S. 145, 158–159 25 L.Ed. 244 (1879)." (*Crawford, supra*, 541 U.S. at p. 62.)

Here, there is no dispute that the victim's prior statements were testimonial in nature. (See *Davis v. Washington* (2006) 547 U.S. 813 [165 L.Ed.2d 224, 126 S.Ct. 2266, 2273–2274, 2278–2279] (*Davis*) [victim's statements to responding police officer during questioning were testimonial; "primary purpose" of questioning was to establish facts for later prosecution].)

Defendant acknowledges that the forfeiture by wrongdoing doctrine is an exception to the confrontation clause, but argues that it is inapplicable here because defendant did not kill the victim with the intent of preventing her testimony at a pending or potential trial. Rather, where, as in this case, defendant killed the victim for unrelated personal reasons, the confrontation clause bars admission of the victim's prior testimonial statements. To answer defendant's claim, we first examine the development of the forfeiture by wrongdoing doctrine.

Although this court has not addressed the forfeiture by wrongdoing doctrine, federal and other state courts have affirmed its validity. The United States Supreme Court first applied the doctrine of forfeiture by wrongdoing in *Reynolds v. United States, supra*, 98 U.S. 145, 158–159 (*Reynolds*). In *Reynolds* (the only forfeiture case cited in *Crawford*), the defendant was on trial for bigamy. When the court officer contacted Reynolds in an attempt to serve a subpoena on his second wife (who had previously testified about the bigamy offense in an earlier trial), Reynolds would not divulge her location and stated that his second wife would not appear at the trial. Over the defendant's confrontation clause objection, the trial court allowed the second wife's testimony from the defendant's earlier trial. (*Id.* at pp. 158–161.)

In applying the doctrine of forfeiture by wrongdoing, the court reasoned, "The Constitution gives the accused the right to a trial at which he should be confronted with the witnesses against him; but if a witness is absent by [the defendant's] own wrongful procurement, [the defendant] cannot complain if competent evidence is admitted to supply the place of that which he has kept away. The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts. . . . [I]f [a defendant] voluntarily keeps the witnesses away, he cannot insist on his [confrontation] privilege. If, therefore, when absent by his procurement, their evidence is

supplied in some lawful way, he is in no condition to assert that his constitutional rights have been violated." (*Reynolds, supra,* 98 U.S. at p. 158.) The court further explained, "The rule has its foundation in the maxim that no one shall be permitted to take advantage of his own wrong; and, consequently, if there has not been, in legal contemplation, a wrong committed, the way has not been opened for the introduction of the testimony." (*Id.* at p. 159.)

Notably, in describing the rule, the court did not suggest that the rule's applicability hinged on Reynolds's purpose or motivation in committing the wrongful act.[3] Applying that rule to the facts of the case, the court upheld the trial court's factual finding that Reynolds had kept his wife from testifying and ruled that the prior testimony was properly admitted. (*Reynolds, supra,* 98 U.S. at pp. 158–161.)

The high court recently affirmed the equitable nature of the forfeiture doctrine. In *Davis,* the court stated, "We reiterate what we said in *Crawford*: that 'the rule of forfeiture by wrongdoing . . . extinguishes confrontation claims on essentially equitable grounds.' 541 U.S., at 62, 124 S.Ct. 1354 [158 L.Ed.2d 177] (citing *Reynolds,* 98 U.S., at 158–159[, 25 L.Ed. 244]). That is, one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation." (*Davis, supra,* 547 U.S. at p. ___ [126 S.Ct. at p. 2280].)

Although the United States Supreme Court has cited *Reynolds* and addressed this doctrine infrequently, the lower federal courts began applying the forfeiture rule extensively in the context of witness tampering cases.[4] Starting in the 1960's and 1970's, the federal government placed greater emphasis on the prosecution of organized crime and drug activity; as many of these

---

[3] *Reynolds* reviewed antecedent English common law cases (*Lord Morley's Case* (1666) 6 How. St. Tr. 770; *Harrison's Case* (1692) 12 How. St. Tr. 833; and *Regina v. Scaife* (Q.B. 1851) 117 Eng. Rep. 1271) and early American antecedents of the forfeiture cases (*Drayton v. Wells* (1819) 10 S.C. L. (1 Nott & McC.) 409; *Williams v. The State* (1856) 19 Ga. 402). Although the facts therein involved witnesses and acts occurring after the witnesses had been deposed or had testified, those cases did not specifically address the intention of the defendants to prevent the witnesses' testimony at a pending trial. Instead, the focus was on whether there was adequate proof that the defendants caused the witnesses' absence.

[4] Between *Reynolds* and *Crawford,* the United States Supreme Court cited *Reynolds* infrequently and generally in the context of the admission of an unavailable witness's prior sworn testimony at a proceeding which the defendant had attended. (See *Diaz v. United States* (1912) 223 U.S. 442, 452 [56 L.Ed. 500, 32 S.Ct. 250]; *West v. Louisiana* (1904) 194 U.S. 258, 265 [48 L.Ed. 965, 24 S.Ct. 650]; *Motes v. United States* (1900) 178 U.S. 458, 471–472 [44 L.Ed. 1150, 20 S.Ct. 993]; *Mattox v. United States* (1895) 156 U.S. 237, 242 [39 L.Ed. 409, 15 S.Ct. 337].)

prosecutions involved reluctant witnesses who experienced great pressure not to testify, forfeiture by wrongdoing became more central to prosecution efforts. (King-Ries, *Forfeiture by Wrongdoing: A Panacea for Victimless Domestic Violence Prosecutions* (2006) 39 Creighton L.Rev. 441, 452–453.)

*United States v. Carlson* (8th Cir. 1976) 547 F.2d 1346, was the first modern federal circuit court case to use the defendant's wrongdoing against a witness to resolve a confrontation clause issue. There, the witness purchased drugs from the defendant, but before trial refused to testify despite having been granted immunity. The witness related that he feared reprisals, but only indirectly implicated the defendant in the threats. (*Id.* at pp. 1352–1353.) The court held that the defendant, by intimidating the witness into not testifying and causing the witness's unavailability at trial, was barred from raising a confrontation clause objection to the admission of the witness's grand jury testimony. (*Id.* at pp. 1358–1359.)

Other federal cases involved witness tampering where a defendant murdered or participated in the murders of a witness (see, e.g., *United States v. Dhinsa* (2d Cir. 2001) 243 F.3d 635, 650–654; *United States v. Cherry* (10th Cir. 2000) 217 F.3d 811, 813, 820; *United States v. Emery* (8th Cir. 1999) 186 F.3d 921, 925; *United States v. White* (D.C. Cir. 1997) 325 U.S. App. D.C. 282 [116 F.3d 903, 911–912]; *United States v. Mastrangelo* (2d Cir. 1982) 693 F.2d 269, 271–273; *United States v. Thevis* (5th Cir. 1982) 665 F.2d 616, 630) or threatened a witness. (See, e.g., *United States v. Balano* (10th Cir. 1979) 618 F.2d 624, 628–629; *United States v. Carlson, supra*, 547 F.2d at p. 1353.) In the federal cases, the courts applied the forfeiture by wrongdoing doctrine where the defendant, by a wrongful act, was involved in or responsible for procuring the unavailability of a hearsay declarant, and did so, at least in part, with the intention of making the declarant unavailable as an actual or potential witness against the defendant. (*United States v. Dhinsa, supra*, 243 F.3d at pp. 653–654; *United States v. Emery, supra*, 186 F.3d at pp. 925–927; *United States v. Houlihan* (1st Cir. 1996) 92 F.3d 1271, 1279–1280; *Steele v. Taylor* (6th Cir. 1982) 684 F.2d 1193, 1198–1199, 1202; *United States v. Thevis, supra*, 665 F.2d at p. 630; *United States v. Balano, supra*, 618 F.2d at pp. 628–629.) In many of these cases, it was held that the defendants were barred from objecting under both the rule against hearsay and the confrontation clause. (See, e.g., *United States v. Carlson, supra*, 547 F.2d at pp. 1353–1355; *United States v. White, supra*, 116 F.3d at pp. 912–913; *United States v. Mastrangelo, supra*, 693 F.2d at p. 272.)

The forfeiture by wrongdoing doctrine, as articulated by the lower federal courts, was codified with regard to federal hearsay rules in 1997 with the adoption of Federal Rules of Evidence, rule 804(b)(6) (28 U.S.C.). (*United States v. Scott* (7th Cir. 2002) 284 F.3d 758, 762.) That rule states, "Hearsay

exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: [¶] . . . [¶] (6) Forfeiture by wrongdoing. A statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." (Fed. Rules Evid., rule 804(b)(6), 28 U.S.C.) The text of the rule was based on *United States v. Thevis,* which identified two elements: "(1) the defendant caused the witness' unavailability (2) for the purpose of preventing that witness from testifying at trial." (*United States v. Thevis, supra,* 665 F.2d at p. 633, fn. 17; see Flanagan, *Forfeiture by Wrongdoing and Those Who Acquiesce in Witness Intimidation: A Reach Exceeding Its Grasp and Other Problems with Federal Rule of Evidence 804(b)(6)* (2003) 51 Drake L.Rev. 459, 477.) The adoption of a specific intent requirement limited the federal hearsay rule to witness tampering cases. (*Ibid.*)

A similar pre-*Crawford* development of the forfeiture by wrongdoing rule occurred in the states. As with the federal courts, the state courts generally applied the rule when the defendant intended to, and did, tamper with an actual or potential witness to prevent the witness from cooperating with the authorities or testifying at trial. (See, e.g., *State v. Valencia* (Ct.App. 1996) 186 Ariz. 493 [924 P.2d 497, 499–503]; *State v. Henry* (2003) 76 Conn.App. 515 [820 A.2d 1076, 1087–1088]; *Devonshire v. United States* (D.C. 1997) 691 A.2d 165, 166; *State v. Hallum* (Iowa 2000) 606 N.W.2d 351, 358; *State v. Gettings* (1989) 244 Kan. 236 [769 P.2d 25, 27–29]; *State v. Magouirk* (La.Ct.App. 1988) 539 So.2d 50, 64–66; *State v. Black* (Minn. 1980) 291 N.W.2d 208, 213–214; *State v. Sheppard* (Ct. Law Div. 1984) 197 N.J. Super. 411 [484 A.2d 1330, 1345–1348]; *Holtzman v. Hellenbrand* (N.Y.App.Div. 1983) 92 A.D.2d 405 [460 N.Y.S.2d 591, 597].)

*Crawford* reshaped the confrontation landscape: Testimonial evidence that previously had been admitted under "firmly rooted" hearsay exceptions, or that met comparable reliability standards, became inadmissible unless the defendant had the opportunity to cross-examine the witness. (*Crawford, supra,* 541 U.S. at pp. 60–61, 68.) Previously, the primary purpose of the confrontation clause was to prevent the introduction of unreliable hearsay that fell outside a firmly rooted hearsay exception and that did not otherwise satisfy comparable reliability standards. (*Roberts, supra,* 448 U.S. at p. 66.) After *Crawford,* the response of many courts (including the Court of Appeal in this case) was to focus on the equitable forfeiture rationale which could eliminate the need for evidence of witness tampering and broaden the scope of the rule to all homicide cases.

*State v. Meeks* (2004) 277 Kan. 609 [88 P.3d 789] (*Meeks*) was the first post-*Crawford* case. There, the defendant shot James Green, the victim,

during an argument and fistfight. About 10 minutes after the shooting, Green identified the defendant as the shooter to an officer at the scene, but died soon thereafter. During trial, the prosecution introduced Green's statement identifying the defendant to the police. Although the court noted that the victim's response to the officer's question was arguably testimonial, *Meeks* found it unnecessary to decide that issue. Instead, it held that the defendant "forfeited his right to confrontation by killing the witness, Green." (*Meeks, supra,* 88 P.3d at pp. 793–794.) Noting that the high court in *Crawford* "continued to accept the [*Reynolds*] rule of forfeiture by wrongdoing which 'extinguishes confrontation claims on essentially equitable grounds,' " *Meeks* relied on the reasoning set forth in *Reynolds* that " 'if a witness is absent by his own [the accused's] wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away.' " (*Meeks, supra,* 88 P.3d at p. 794.)

In *United States v. Mayhew* (S.D.Ohio 2005) 380 F.Supp.2d 961 (*Mayhew*), the court applied the forfeiture by wrongdoing doctrine to facts similar to those in *Meeks.* In *Mayhew,* the defendant kidnapped and shot the victim. While the victim was in the ambulance, a police officer interviewed her. The victim related that the defendant had earlier killed her mother and her mother's fiancé, and identified the defendant as her kidnapper and shooter. The victim died soon thereafter at the hospital. (*Id.* at pp. 963, 965.) The federal district court in *Mayhew* ruled that the victim's statements were testimonial in nature, but admissible. (*Id.* at pp. 965–966.) Relying on *Crawford*'s discussion of the equitable principles underlying the forfeiture doctrine, it reasoned that, "Defendant, in making the witness unavailable for testimony, forfeited his rights under the Confrontation Clause by his own wrongdoing. As the Sixth Circuit has held, 'a defendant only forfeits his confrontation right if his own wrongful conduct is responsible for his inability to confront the witness.' [*United States v.*] *Cromer* [(6th Cir. 2004)] 389 F.3d [662,] 679 (citing Richard D. Friedman, *Confrontation: The Search for Basic Principles,* 86 Geo. L.J. 1011, 1031 (1998))." (*Mayhew, supra,* 380 F.Supp.2d at p. 966.)

In *United States v. Garcia-Meza* (6th Cir. 2005) 403 F.3d 364 (*Garcia-Meza*), a case very similar to this one, the defendant admitted that he was responsible for his wife's death, but claimed that he was not guilty of first degree murder because he was too intoxicated to have premeditated the killing. (*Id.* at pp. 367–368.) The prosecution introduced evidence of a prior incident during which police officers responded to a call about an assault. When the officers arrived, they found the defendant's wife very upset and in pain with numerous cuts and bruises on her body. The wife told the officers that the defendant had repeatedly punched her and threatened to kill her because she

had talked to a former boyfriend earlier in the day. The district court admitted the assault evidence to establish motive, intent, and capacity to commit murder. (*Ibid.*)

Although not deciding whether the wife's statements to the officers were testimonial, the Sixth Circuit Court of Appeals upheld the admission of the statements. Relying on the equitable principles outlined in *Crawford* and *Reynolds*, the court reasoned, "[D]efendant admitted that he killed [his wife], thereby procuring her unavailability to testify. The dispute at trial concerned not whether he was the one to stab her, but whether he acted with premeditation to support a conviction of first degree murder. Under these circumstances, there is no doubt that the Defendant is responsible for Kathleen's unavailability. Accordingly, he has forfeited his right to confront her." (*Garcia-Meza, supra*, 403 F.3d at p. 370.)

Similarly, in *People v. Moore* (Colo.Ct.App. 2004) 117 P.3d 1 (*Moore*), a murder case, the Colorado Court of Appeals upheld the admission of the defendant's wife's out-of-court statement implicating the defendant in a prior instance of domestic violence. Citing *Crawford*'s approval of forfeiture by wrongdoing, the court reasoned that, because there was no dispute that the victim was unavailable to testify because of her death and that her death was the result of the defendant's actions, the defendant should not benefit from his wrongdoing. (*Moore, supra*, 117 P.3d at p. 5.) Thus, he forfeited his right to claim a confrontation violation in connection with the admission of the victim's statements into evidence. (*Ibid.*)

In short, *Meeks* and *Mayhew* involved out-of-court statements relating to the charged offense itself. *Garcia-Meza* and *Moore* involved extrajudicial statements relating to a prior incident, similar to this case. Significantly, the courts in these cases applied the forfeiture by wrongdoing doctrine although there was no indication the defendants killed the victims with the intent of preventing testimony at a future trial. (See also *People v. Bauder* (2005) 269 Mich.App. 174 [712 N.W.2d 506, 514–515] (*Bauder*).)

Defendant contends that courts have traditionally applied the forfeiture doctrine only in the context of witness tampering cases, and that the federal rules have codified this approach. Thus, according to defendant, the Court of Appeal in this case and the above post-*Crawford* cases improperly expanded the doctrine by eliminating an intent-to-prevent-testimony requirement.

In fact, courts have disagreed over this requirement. Some state and federal courts have stated that the intent-to-silence requirement is only mandated by the federal rules and not by the Constitution. (See, e.g., *Garcia-Meza, supra*, 403 F.3d at p. 370 ["Though the Federal Rules of Evidence may contain [the

intent-to-silence] requirement, *see* Fed. R. Evid. 804(b)(6), the right secured by the Sixth Amendment does not . . . ."]; *United States v. Miller* (1997) 116 F.3d 641, 668 ["Although a 'finding that [defendants'] purpose was to prevent [a declarant from] testifying,' [citation], is relevant, such a finding is not required"]; *Bauder, supra,* 712 N.W.2d at pp. 514–515 [agreeing with *Garcia-Meza*]; *Gonzalez v. State* (Tex.Crim.App. 2004) 155 S.W.3d 603, 611 [stating that while some courts have adopted the intent-to-silence requirement, "we see no reason why the [forfeiture] doctrine should be limited to such cases"].) The Sixth Circuit Court of Appeals explained: "There is no requirement that a defendant who prevents a witness from testifying against him through his own wrongdoing only forfeits his right to confront the witness where, in procuring the witness's unavailability, he intended to prevent the witness from testifying. . . . The Supreme Court's recent affirmation of the 'essentially equitable grounds' for the rule of forfeiture strongly suggests that the rule's applicability does not hinge on the wrongdoer's motive. The Defendant, regardless of whether he intended to prevent the witness from testifying against him or not, would benefit through his own wrongdoing if such a witness's statements could not be used against him, which the rule of forfeiture, based on principles of equity, does not permit." (*Garcia-Meza, supra,* 403 F.3d at pp. 370–371.) Similarly, the Court of Appeal here stated, "we see no reason why the [forfeiture] doctrine should be limited to [intent-to-silence] cases."

Other courts have stated that the intent-to-silence requirement is an element of their forfeiture by wrongdoing doctrines, although stopping short of holding that the intent requirement is constitutionally compelled. (See, e.g., *United States v. Houlihan, supra,* 92 F.3d at p. 1280; *United States v. Thevis, supra,* 665 F.2d at p. 633, fn. 17; *State v. Romero* (2006) 2006 NMCA 45 [133 P.3d 842, 850–855]; *Commonwealth v. Edwards* (2005) 444 Mass. 526 [830 N.E.2d 158, 170]; *People v. Maher* (1997) 89 N.Y.2d 456 [677 N.E.2d 728, 730–731, 654 N.Y.S.2d 1004]; but see *State v. Alvarez-Lopez* (2004) 2004 NMSC 30 [136 N.M. 309, 98 P.3d 699, 704–705].)

Defendant's argument relating to the intent requirement rests on the premise that the forfeiture by wrongdoing doctrine is, in essence, not based on broad forfeiture principles, but instead on waiver principles. Defendant points out that some cases have referred to the rule as the waiver by wrongdoing doctrine. (See, e.g., *United States v. Cherry, supra,* 217 F.3d at p. 815; *United States v. Houlihan, supra,* 92 F.3d at pp. 1278–1279; *United States v. Aguiar* (2nd Cir. 1992) 975 F.2d 45, 47; *United States v. Thevis, supra,* 665 F.2d at p. 630; but see *Steele v. Taylor, supra,* 684 F.2d at p. 1201, fn. 8 [waiver concept is legal fiction; defendant "simply does a wrongful act that has legal consequences that he may or may not foresee"].) The underlying premise of those cases is that a defendant who intentionally prevents an actual or potential witness from testifying at a trial knows that the witness is

no longer available and cannot be cross-examined, and thus, has impliedly, if not expressly, waived his confrontation rights by his misconduct. (*Thevis, supra,* 665 F.2d at p. 630.)

■ However, the United States Supreme Court has characterized the rule in question as a "forfeiture" that "extinguishes confrontation claims on essentially equitable grounds," not a waiver. (*Crawford, supra,* 541 U.S. at p. 62.) Although applied to the facts of a witness tampering case, *Reynolds* described the rule without reference to a defendant's motivation. (*Reynolds, supra,* 98 U.S. at p. 158 ["If, therefore, when absent by [a defendant's wrongful] procurement, their evidence is supplied in some lawful way, he is in no condition to assert that his constitutional rights have been violated"].) The rule, as enunciated by the high court, is based on two broad equitable principles: (1) "[t]he rule has its foundation in the maxim that no one shall be permitted to take advantage of his own wrong"; (2) "but if a witness is absent by his own wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away." (*Reynolds, supra,* 98 U.S. at pp. 159, 158.) Thus, wrongfully causing one's own inability to cross-examine is what lies at the core of the forfeiture rule.

As in *Reynolds,* many courts applying the rule (even in the context of witness tampering cases), emphasize the equitable aspects of the rule rather than the defendant's underlying motives in procuring the witness's absence. (See, e.g., *United States v. Thompson* (7th Cir. 2002) 286 F.3d 950, 962, quoting *United States v. White, supra,* 116 F.3d at p. 911 [" 'defendant who has removed an adverse witness is in a weak position to complain about losing the chance to cross-examine him' "]; *United States v. Emery, supra,* 186 F.3d at p. 926 ["defendant may not benefit from his or her wrongful prevention of future testimony from a witness or potential witness"]; *United States v. Rouco* (11th Cir. 1985) 765 F.2d 983, 995 [defendant "waived his right to cross-examine [the victim] by killing him. 'The Sixth Amendment does not stand as a shield to protect the accused from his own misconduct or chicanery' "]; *United States v. Mayes* (6th Cir. 1975) 512 F.2d 637, 651 [defendant "cannot now be heard to complain that he was denied the right of cross-examination and confrontation when he himself was the instrument of the denial"]; *Steele v. Taylor, supra,* 684 F.2d at p. 1202 ["defendant cannot prefer the law's preference [for live testimony over hearsay] and profit from it . . . while repudiating that preference by creating the condition that prevents it"].)

Thus, it appears that the intent-to-silence element required by some cases evolved from the erroneous characterization of the forfeiture doctrine as the waiver by misconduct doctrine. Because a waiver is an intelligent relinquishment of a known right, the intent-to-silence element was added to establish

the defendant was on notice that the declarant was a potential witness and therefore knowingly relinquished the right to cross-examine that witness. (See *United States v. Houlihan, supra*, 92 F.3d at pp. 1279–1280.) But, "[t]he Supreme Court's recent affirmation of the 'essentially equitable grounds' for the rule of forfeiture strongly suggests that the rule's applicability does not hinge on the wrongdoer's motive." (*Garcia-Meza, supra*, 403 F.3d at p. 370.)

Although some courts have used the terms "waiver" and "forfeiture" interchangeably, the high court, in a pre-*Crawford* case, has explained that they are quite different. (*United States v. Olano* (1993) 507 U.S. 725, 733 [123 L.Ed.2d 508, 113 S.Ct. 1770], citing *Freytag v. Commissioner* (1991) 501 U.S. 868, 894–895, fn. 2 [115 L.Ed.2d 764, 111 S.Ct. 2631] (conc. opn. of Scalia, J.) ["[t]he two are really not the same."].) "Waiver, the 'intentional relinquishment or abandonment of a known right or privilege,' [citation], *is merely one means by which a forfeiture may occur*. Some rights may be forfeited by means short of waiver, [citations]." (*Freytag v. Commissioner, supra*, 501 U.S. at pp. 894–895, fn. 2 (conc. opn. of Scalia, J.), italics added.) Although courts have traditionally applied the forfeiture rule to witness tampering cases, forfeiture principles can and should logically and equitably be extended to other types of cases in which an intent-to-silence element is missing. As the Court of Appeal here stated, "Forfeiture is a logical extension of the equitable principle that no person should benefit from his own wrongful acts. *A defendant whose intentional criminal act renders a witness unavailable for trial benefits from his crime if he can use the witness's unavailability to exclude damaging hearsay statements by the witness that would otherwise be admissible. This is so whether or not the defendant specifically intended to prevent the witness from testifying at the time he committed the act that rendered the witness unavailable.*"[5]

Here, there were no eyewitnesses to the fatal shooting; defendant and the victim were the only ones present. Defendant testified at trial and admitted shooting the victim, but claimed he had acted in self-defense. He claimed that the victim was very jealous of other women, and was a violent person who had previously shot a man, threatened people with knives, and vandalized his

---

[5] Defendant argues that language in *Davis* regarding the forfeiture by wrongdoing doctrine—"when defendants *seek* to undermine the judicial process by procuring or coercing silence from witnesses and victims"—supports his claim that an intent-to-silence requirement is constitutionally compelled. (*Davis, supra*, 547 U.S. at p. ___ [126 S.Ct. at p. 2280], italics added.) However, that language only describes the traditional form of witness tampering cases—in the context of the domestic violence cases therein where the victims did not testify at trial—without limiting the forfeiture doctrine to witness tampering cases. More important, *Davis* reaffirmed the equitable nature of the forfeiture by wrongdoing doctrine and declared that *Crawford*, in overruling *Roberts, supra*, 448 U.S. 56, did not destroy the ability of courts to protect the integrity of their proceedings. (*Davis, supra*, 547 U.S. at p. ___ [126 S.Ct. at p. 2280].)

home and car on two separate occasions. When describing some of these prior acts, defendant repeated statements allegedly made by the victim. Defendant testified that the victim told him she had shot a man during an argument. He further testified that, during two prior aggravated assaults, the victim declared that she wanted to "check that bitch" on one occasion, while on the other she asserted that she wanted "to kill that bitch."

In relating his version of the fatal events in this case, defendant again repeated statements allegedly made by the victim. He testified that they had had a "typical" argument earlier that day. The victim knew defendant was with his new girlfriend, and said she was on her way there to kill her. When she arrived, she threatened to kill both defendant and "that bitch." Afraid she had something in her hand, defendant shot at her several times after she "charged" him. Thus, partially through the victim's own alleged statements, defendant portrayed her as a violent, aggressive, foulmouthed, jealous, and volatile person.

■ Defendant now argues that admission of the victim's extrajudicial statements to the police, which conflicted with his portrayal of the victim as the aggressor, violated his confrontation rights. Defendant should not be able to take advantage of his own wrong by using the victim's statements to bolster his self-defense theory, while capitalizing on her unavailability and asserting his confrontation rights to prevent the prosecution from using her conflicting statements. "A defendant cannot prefer the law's preference [for live testimony over hearsay] and profit from it . . . while repudiating that preference by creating the condition that prevents it." (*Steele v. Taylor, supra,* 684 F.2d at p. 1202.)

"The *Roberts* approach to the Confrontation Clause undoubtedly made recourse to [the forfeiture by wrongdoing] doctrine less necessary, because prosecutors could show the 'reliability' of *ex parte* statements more easily than they could show the defendant's procurement of the witness's absence. *Crawford,* in overruling *Roberts,* did not destroy the ability of courts to protect the integrity of their proceedings." (*Davis, supra,* 547 U.S. at p. \_\_\_ [126 S.Ct. at p. 2280].) Accordingly, we conclude that, to protect the integrity of their proceedings, post-*Crawford* courts (including the Court of Appeal in this case) have correctly applied the forfeiture doctrine in a necessary, equitable manner. That is, courts should be able to further the truth-seeking function of the adversary process when necessary, allowing fact finders access to relevant evidence that the defendant caused not to be available through live testimony. (See *Steele v. Taylor, supra,* 684 F.2d at p. 1201 ["the disclosure of relevant information at a public trial is a paramount interest, and any significant interference with that interest, other than by exercising a legal right to object at the trial itself, is a wrongful act"].)

We must also decide whether the doctrine of forfeiture by wrongdoing applies where the alleged wrongdoing is the same as the offense for which defendant was on trial. In other words, defendant was on trial for the same wrongdoing (murder) that caused the forfeiture of his right to confront the victim. Because the two acts are the same, the court's forfeiture finding (as a predicate evidentiary matter) depends on determining that defendant committed the charged criminal act.

In the classic witness tampering cases, the defendant is not on trial for the same wrongdoing that caused the forfeiture of his confrontation right, but rather for a prior underlying crime about which the victim was about to testify. (See, e.g., *United States v. Balano, supra,* 618 F.2d at pp. 625–626; *United States v. Carlson, supra,* 547 F.2d at pp. 1352–1353.) However, even in the context of witness tampering, courts have applied forfeiture where the defendant was charged with the same homicide that rendered the witness unavailable. (See, e.g., *United States v. Dhinsa, supra,* 243 F.3d at pp. 642–644, 650; *United States v. Emery, supra,* 186 F.3d at p. 926; *United States v. White, supra,* 116 F.3d at pp. 909–910; *United States v. Houlihan, supra,* 92 F.3d at pp. 1278–1281; *United States v. Rouco, supra,* 765 F.2d at pp. 993–995; *United States v. Thevis, supra,* 665 F.2d at pp. 627–633; but see *United States v. Lentz* (E.D.Va. 2002) 282 F.Supp.2d 399, 426–427 [rejecting application of forfeiture rule in murder trial where murder was done to procure witness's unavailability in divorce proceeding].)

The argument against permitting a judicial preliminary determination of forfeiture is that in ruling on the evidentiary matter, a trial court is required, in essence, to make the same determination of guilt of the charged crime as the jury. (*United States v. Lentz, supra,* 282 F.Supp.2d at p. 426 [forfeiture rule violates presumption of innocence and right to jury trial].) In responding to that argument, courts have found analogous the procedures for admitting coconspirator statements against a defendant who is charged with conspiracy; the trial court makes a preliminary finding of conspiracy that is proven by a preponderance of the evidence. (See, e.g., *United States v. Emery, supra,* 186 F.3d at pp. 926–927; *United States v. White, supra,* 116 F.3d at p. 912; *United States v. Houlihan, supra,* 92 F.3d at p. 1280; cf. *Bourjaily v. United States* (1987) 483 U.S. 171, 175–176 [97 L.Ed.2d 144, 107 S.Ct. 2775] [approval of trial court's predicate finding that conspiracy existed even when one of the underlying crimes before the jury was the existence of the same conspiracy].) The presumption of innocence and right to jury trial will not be infringed because the jury "will never learn of the judge's preliminary finding" and "will use different information and a different standard of proof to decide the defendant's guilt." (*Mayhew, supra,* 380 F.Supp.2d at p. 968, fn. omitted.) Recognizing that the courts have generally applied the forfeiture by wrongdoing doctrine even where the alleged wrongdoing is the same as the

charged offense, defendant no longer disputes that the forfeiture doctrine can apply under these circumstances. We see no reason to adopt a different rule.

Regarding the applicable standard of proof, the Court of Appeal's initial opinion held that the facts supporting the application of the forfeiture by wrongdoing doctrine must be proven to a trial court by clear and convincing evidence. After the Attorney General filed a petition for rehearing in which he argued that the appropriate standard is proof by a preponderance of the evidence, the court left "the issue of the appropriate burden of proof for another day" on the ground there was sufficient evidence of forfeiture under either standard. We agree with the Attorney General that, because the issue is "fairly included in" the issues on which we granted review (Cal. Rules of Court, rule 8.516(b)(1)), we should decide it to provide guidance to the trial courts.

The majority of the lower federal courts have held that the applicable standard necessary for the prosecutor to demonstrate forfeiture by wrongdoing is by a preponderance of the evidence. (See, e.g., *United States v. Cherry, supra*, 217 F.3d at p. 820; *United States v. Thai* (2nd Cir. 1994) 29 F.3d 785, 814; *United States v. Mastrangelo, supra*, 693 F.2d at p. 273; *Steele v. Taylor, supra*, 684 F.2d at pp. 1202–1203; *United States v. Balano, supra*, 618 F.2d at p. 629; *Mayhew, supra*, 380 F.Supp.2d at p. 968; but see *United States v. Thevis, supra*, 665 F.2d at p. 631 [requiring clear and convincing evidence].) Many of the federal courts have found that the forfeiture finding is the functional equivalent of the predicate factual findings that a court must make in ruling on the admissibility of extrajudicial statements under the coconspirator exception, which need only be proved by a preponderance of the evidence.[6] (See, e.g., *United States v. Emery, supra*, 186 F.3d at pp. 926–927; *United States v. White, supra*, 116 F.3d at p. 912; *United States v. Houlihan, supra*, 92 F.3d at p. 1280; *Steele v. Taylor, supra*, 684 F.2d at pp. 1202–1203; see also *Commonwealth v. Edwards, supra*, 830 N.E.2d at pp. 172–173; *Commonwealth v. Morgan* (2005) 69 Va.Cir. 228,. 232.) One court based its decision regarding the preponderance standard on *Reynolds* itself. (*Steele v. Taylor, supra*, 684 F.2d at p. 1202, citing *Reynolds, supra*, 98 U.S. at p. 160 [" 'enough had been shown [by the government] to cast the burden of proof

---

[6] *Bourjaily v. United States, supra*, 483 U.S. at pages 175–176, held that under the Federal Rules of Evidence, the government need only prove its threshold burden by a preponderance of the evidence when establishing the predicate facts relating to the admissibility of coconspirator statements. Although *Bourjaily* does not expressly consider the standard of proof on a confrontation clause claim, the discussion relies on constitutional cases in selecting the preponderance standard (e.g., *United States v. Matlock* (1974) 415 U.S. 164, 177–178 [39 L.Ed.2d 242, 94 S.Ct. 988] [voluntariness of consent to search must be shown by preponderance of the evidence]; *Lego v. Twomey* (1972) 404 U.S. 477, 489 [30 L.Ed.2d 618, 92 S.Ct. 619] [voluntariness of confession must be demonstrated by a preponderance of the evidence]). (*Bourjaily v. United States, supra*, 483 U.S. at p. 176.)

on him [the defendant] of showing that he had not been instrumental in concealing or keeping the witness away.' "]; see *West v. Louisiana, supra*, 194 U.S. at p. 265 [*Reynolds* "held that when there was *some* proof that an absent witness was kept away by procurement of the defendant the burden of proof was on him to show . . . that he was not instrumental in concealing or keeping the witness away," italics added].)

■ Some federal courts do not even require a judicial preliminary determination of forfeiture; instead they allow the hearsay statement to be admitted at trial contingent on proof that the defendant wrongfully procured the unavailability of the declarant by a preponderance of the evidence. (See, e.g., *United States v. Emery, supra*, 186 F.3d at p. 926; *United States v. White, supra*, 116 F.3d at pp. 914–915; *United States v. Houlihan, supra*, 92 F.3d at p. 1281, fn. 5.) Moreover, if a hearing on forfeiture is required, federal courts generally permit the prosecution to rely on the challenged hearsay evidence when proving forfeiture. (See, e.g., *United States v. White, supra*, 116 F.3d at p. 914 [leaving "for another day the issue of whether a forfeiture finding could rest *solely* on hearsay"]; *United States v. Houlihan, supra*, 92 F.3d at p. 1281; *United States v. Mastrangelo, supra*, 693 F.2d at p. 273; see also *United States v. Emery, supra*, 186 F.3d at p. 927 ["inclined to doubt" that wrongful procurement must be proven independently of the challenged hearsay]; *Commonwealth v. Edwards, supra*, 830 N.E.2d at p. 174.)[7] We thus agree that "[a] standard that requires the proponent to show that it is more probable than not that the defendant procured the unavailability of the witness is constitutionally sufficient under the . . . confrontation clause[]." (*Steele v. Taylor, supra*, 684 F.2d at p. 1202.)[8]

---

[7] *Davis, supra*, 547 U.S. at page ___ [126 S.Ct. at page 2280], noted that federal and state courts have generally held the government to the preponderance of evidence standard to demonstrate forfeiture. Further, although noting that *Commonwealth v. Edwards, supra*, 830 N.E.2d at page 174, permitted the trial court's consideration of the unavailable witness's out-of-court statements at a hearing on forfeiture, it took "no position on the standards necessary to demonstrate . . . forfeiture." (*Davis, supra*, 547 U.S. at p. ___ [126 S.Ct. p. 2280].)

[8] Defendant argues that proof of forfeiture must be established by clear and convincing evidence. He points to Evidence Code section 1350, which establishes an independent, narrow hearsay exception in serious felony cases, based on forfeiture by wrongdoing principles. An unavailable witness's out-of-court statements is admissible when there is "clear and convincing evidence that the declarant's unavailability was knowingly caused by, aided by, or solicited by the party against whom the statement is offered for the purpose of preventing the arrest or prosecution of the party and is the result of the death by homicide or the kidnapping of the declarant." (Evid. Code, § 1350, subd. (a)(1).) However, the Legislature, in establishing more stringent standards, is not the final arbiter of constitutional standards. (See *Jones v. Superior Court* (1970) 3 Cal.3d 734, 740 [91 Cal.Rptr. 578, 478 P.2d 10].) We further note that section 1350, setting forth a higher statutory standard of proof, survives California Constitution, article I, section 28, subdivision (d) (Prop. 8) because it was enacted by a two-thirds vote of

■ The application of the rule should be subject to several limitations. First, the witness should be genuinely unavailable to testify and the unavailability for cross-examination should be caused by the defendant's intentional criminal act. Second, a trial court cannot make a forfeiture finding based solely on the unavailable witness's unconfronted testimony; there must be independent corroborative evidence that supports the forfeiture finding.

The forfeiture by wrongdoing doctrine, as adopted by us, only bars a defendant's objection under the confrontation clause of the federal Constitution and does not bar statutory objections under the Evidence Code. Thus, even if it is established that a defendant has forfeited his or her right of confrontation, the contested evidence is still governed by the rules of evidence; a trial court should still determine whether an unavailable witness's prior hearsay statement falls within a recognized hearsay exception and whether the probative value of the proffered evidence outweighs its prejudicial effect. (Evid. Code, § 352.) Finally, the jury should not be advised of the trial court's underlying finding that defendant committed an intentional criminal act so that the jury will draw no inference about the ultimate issue of guilt based on the evidentiary ruling itself.

Here, the Court of Appeal correctly found that there was clear and convincing evidence that defendant procured the victim's unavailability through criminal conduct—a criminal homicide. A fortiori, the preponderance of the evidence standard was also met. Defendant retrieved a loaded gun from inside the garage after the victim returned to the house. Preparing to fire the gun, he disengaged its safety and then shot her six times in her torso. Two of those wounds were fatal; one was consistent with her holding up her hand at the time she was shot; one was consistent with her having turned to her side when she was shot; and one was consistent with her being shot while she was lying on the ground. One of the investigating officers testified that a semiautomatic firearm such as the one used by defendant fires only once each time the trigger is pulled, supporting an inference that defendant had pulled the trigger for each shot. In contrast, the victim was not carrying a weapon when she was shot. Immediately after the shooting, defendant fled the scene and did not turn himself in to the police.

The above independent evidence, considered with the victim's prior statements, supports the Court of Appeal's conclusion that defendant did not shoot in self-defense, and instead committed an unlawful homicide that caused the victim's unavailability to testify at trial. As noted by the Court of Appeal, "the evidence supporting this [self-defense] theory was weak and it is inconceivable that any rational trier of fact would have concluded the

the membership in each house of the Legislature. (See *People v. Markham* (1989) 49 Cal.3d 63 [260 Cal.Rptr. 273, 775 P.2d 1042].)

shooting was excusable or justifiable." Thus, defendant has forfeited his confrontation clause challenge to the victim's prior out-of-court statements to the police.

## CONCLUSION

We conclude that the Court of Appeal's judgment should be affirmed.

George, C. J., Kennard, J., Baxter, J., and Corrigan, J., concurred.

**WERDEGAR, J.,** Concurring.—I concur in the judgment of affirmance. Like the majority, I conclude the doctrine of forfeiture by wrongdoing is not confined exclusively to witness-tampering cases, in which a defendant commits malfeasance in order to procure the unavailability of a witness, but can be applied to these facts as well, where defendant's actions in procuring a witness's unavailability were the same actions for which he stood trial.

That narrow conclusion is enough to dispose of this case. As the majority acknowledges, the evidence available independent of victim Brenda Avie's statements demonstrated clearly and convincingly that defendant Dwayne Giles shot and killed her and was not acting in self-defense. (Maj. opn., *ante*, at p. 854.) Because of this intentional criminal misconduct, Giles forfeited his constitutional confrontation clause objection to the admission of Avie's statements at trial. As the majority further correctly notes, this conclusion does not affect any statutory Evidence Code objections. (*Ibid.*) That should be the end of the matter.

Nevertheless, the majority proceeds to address and resolve two subsidiary questions unnecessary to this case's disposition. First, it decides whether the prosecution, in order to use the victim's hearsay statements, must demonstrate the defendant's wrongdoing by clear and convincing evidence or only a preponderance of the evidence, despite its implicit acknowledgement the issue is not implicated here because either standard was satisfied. Second, it decides whether and to what extent the victim's challenged statements may be used in making this threshold showing of wrongdoing, despite the fact, again, the evidence available independent of Avie's statements makes it unnecessary to speak to this point.

Although as a general matter I endorse the majority's desire to offer guidance to the trial courts, here the procedural posture of the case and the substantive nature of the issues make reaching out to do so both unnecessary and unwise.

Procedurally, these issues were never addressed by either court below, not by the trial court, because Giles's trial predated *Crawford v. Washington* (2004) 541 U.S. 36 [158 L.Ed.2d 177, 124 S.Ct. 1354], which revised the standards for determining when the confrontation clause prohibits admission of testimonial hearsay, and not by the Court of Appeal, because it recognized, correctly, that either standard was met here. The Court of Appeal, moreover, never discussed whether it arrived at this conclusion exclusively based on, partially based on, or entirely without reliance on Avie's statements. Our grant of review limited issues and focused on whether forfeiture by wrongdoing could be applied when the wrongdoing was identical to the offense for which the defendant stood trial. Given that limitation, the parties in their briefing touched only in passing on the standard of proof question and discussed the second question not at all. Thus, even were there compelling reasons to reach out and address issues unnecessary to this case's disposition, this record would provide a notably poor basis for doing so.

Were the issues at stake routine, the absence of any considered views from the parties or lower courts, in a case where the issues are immaterial to the case's disposition, would mean less. Substantively, however, they are not routine. The questions of the appropriate standard of proof and the appropriate evidentiary basis for finding forfeiture of a constitutional right are questions of constitutional dimension. Proposition 8's "Truth-in-Evidence" provisions require admission of evidence except to the extent existing statutory or constitutional rules or privileges require otherwise. (Cal. Const., art. I, § 28, subd. (d).) Thus, to decide the subsidiary questions the majority purports to resolve, we must examine the confrontation clause of the United States Constitution, and perhaps the due process clause as well, and determine what they require.

In lieu of serious constitutional analysis, however, the majority simply notes that most—but not all—lower federal courts to consider the question have settled on a preponderance of the evidence standard, and proceeds to join in that view. (Maj. opn., *ante*, at pp. 852–854.) That majority federal view might well be right, but it might also be wrong, especially given that the federal cases the majority relies upon uniformly antedate the United States Supreme Court's recent reassertion of the breadth and importance of the confrontation clause in ensuring defendants their fair trials. (*Crawford v. Washington, supra*, 541 U.S. at pp. 68–69 ["Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation"];[1] see also *United States v. Thevis* (5th Cir. 1982) 665 F.2d 616, 631 [even

---

[1] While *Crawford* accepted that forfeiture by wrongdoing could, when proven, extinguish confrontation clause rights, neither it nor the United States Supreme Court's followup decision in *Davis v. Washington* have purported to resolve what showing will suffice to establish a

pre-*Crawford*, holding "because confrontation rights are so integral to the accuracy of the fact-finding process and the search for truth . . . , we conclude that the trial court was correct in requiring clear and convincing evidence of a waiver of this right"]; *People v. Geraci* (1995) 85 N.Y.2d 359 [649 N.E.2d 817, 822, 625 N.Y.S.2d 469] [concluding clear and convincing evidence is required because forfeiture results in "loss of the valued Sixth Amendment confrontation right" and because of "the intimate association between the right to confrontation and the accuracy of the fact-finding process"].)[2]

Constitutional analysis should not be embarked on lightly and never when a case's resolution does not demand it. As then Associate Justice George once explained in like circumstances: "[T]he majority's approach is inconsistent with well-established principles of judicial restraint. In his celebrated concurring opinion in *Ashwander v. Valley Authority* (1936) 297 U.S. 288, 347 [80 L.Ed. 688, 56 S.Ct. 466], Justice Brandeis, in reviewing a number of settled precepts of judicial practice, observed that '[t]he Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of. . . . Thus, if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter. [Citations.]' California courts have long subscribed to this principle. (See, e.g., *Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 66 [195 P.2d 1] [' "It is a well-established principle that this Court will not decide constitutional questions where other grounds are available and dispositive of the issues of the case." ']; *People v. Barton* (1963) 216 Cal.App.2d 542, 546 [31 Cal.Rptr. 7].)" (*Rider v. County of San Diego* (1991) 1 Cal.4th 1, 17 [2 Cal.Rptr.2d 490, 820 P.2d 1000] (conc. opn. of George, J.); see also *Morning Star Co. v. State Bd. of Equalization* (2006) 38 Cal.4th 324, 332, 342 [42 Cal.Rptr.3d 47, 132 P.3d 249]; *People v. McKay* (2002) 27 Cal.4th 601, 626–627 [117 Cal.Rptr.2d 236, 41 P.3d 59] (conc. opn. of Werdegar, J.); *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230 [45 Cal.Rptr.2d 207, 902 P.2d 225]; *People v. Williams* (1976) 16 Cal.3d 663, 667 [128 Cal.Rptr. 888, 547 P.2d 1000] ["[W]e do not reach constitutional questions unless absolutely required to do so to dispose of the matter before us"].)

forfeiture. (See *Davis v. Washington* (2006) 547 U.S. 813, ___ [165 L.Ed.2d 224, 126 S.Ct. 2266, 2280]; *Crawford v. Washington, supra,* 541 U.S. at p. 62.)

[2] The issue of what evidentiary basis may support a showing of forfeiture of the constitutional right to confront and cross-examine the speaker by wrongdoing—May the prosecution rely solely, or even in part, on the very unconfronted statements it seeks to admit? May the trial court, without the opportunity for confrontation, make reliability determinations concerning these statements?—is likewise a constitutional question of uncertain resolution.

These principles of judicial restraint apply with even greater force here, where the subsidiary constitutional questions the majority addresses are not only unnecessary to the case's disposition but not well presented on the record before us. Consequently, while I concur in the judgment, I do not join in those portions of the majority's analysis that decide the standard of proof or the permissible evidentiary basis for showing forfeiture by wrongdoing.

Moreno, J., concurred.

Appellant's petition for a rehearing was denied May 23, 2007.