The PEOPLE of the State of
Colorado, Petitioner.

v.

Quentin Lobin MORENO, Respondent.

No. 06SC26.

Supreme Court of Colorado,
En Banc.

June 11, 2007.

Rehearing Denied June 25, 2007.*

* Justice EID does not participate.

John W. Suthers, Attorney General, Cheryl Canaday, Assistant Attorney General, Denver, Colorado, Attorneys for Petitioner.

McClintock & McClintock, P.C., Theodore P. McClintock, Elizabeth A. McClintock, Colorado Springs, Colorado, Attorneys for Respondent.

Justice COATS delivered the Opinion of the Court.

The People sought review of the judgment of the court of appeals reversing the defendant's convictions for sexual assault on a child. At trial, the district court admitted a videotaped interview with one of the child victims, in lieu of her live testimony. The court of appeals held that the Sixth Amendment Confrontation Clause, as subsequently construed by the United States Supreme Court in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), barred admission of the out-of-court interview, and the error was not harmless. It also rejected the People's claim that by causing her unavailability, the defendant forfeited his right to confront the child.

Because the People did not prove that the defendant had any intention of subverting the criminal justice system by preventing or dissuading the child from witnessing against him, the record fails to demonstrate that he forfeited his constitutional right to confront her. The judgment of the court of appeals is therefore affirmed.

I.

Quintin Lobin Moreno was charged with two counts of sexual assault on a child by one in a position of trust and one count of sexual assault on a child as part of a pattern of abuse. He was convicted of all three counts and sentenced to terms of ten years to life, to be served concurrently.

An investigation began when B.B., an eight-year-old girl, reported to her mother that the defendant had inappropriately touched her during a visit to his home. When interviewed by the police, B.B. reiterated what she had told her mother. B.B. also disclosed that her friend, A.P., the nine-year-old stepdaughter of the defendant, had confided to her that he had previously touched her inappropriately as well. Two police officers and a special investigative officer subsequently interviewed A.P. at a facility specially-equipped for such interviews. During the videotaped interview, A.P. disclosed that the defendant had touched her inappropriately on numerous occasions.

Prior to trial, the district court heard and granted the People's motion to admit the videotape of A.P.'s interview, pursuant to the statutory hearsay exception in this jurisdiction for statements of child sexual assault victims.[1] In reliance on testimony from A.P.'s therapist to the effect that requiring her to testify would retraumatize her, the district court concluded that A.P. was medically unavailable for trial. It also found sufficient corroborative evidence of the charged acts and sufficient safeguards of reliability in the circumstances of A.P.'s videotaped statements, as required for the statutory exception.

After the People's motion in limine had been granted and defense counsel had been denied permission to speak with A.P. by her mother and guardian ad litem, the defendant moved to depose her. Despite the defendant's willingness not to be present for the interview and his objections that he would otherwise be deprived of any opportunity to confront his accuser, the trial court denied

---

**1.** *See* § 13–25–129(1), C.R.S. (2006).

the motions. At trial, B.B. testified, but A.P. did not.

On appeal the court of appeals reviewed the admission of the videotaped interview in light of the United States Supreme Court's reconsideration of the Confrontation Clause in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), which had been announced after the jury verdict. Finding A.P.'s statements in it to be testimonial, the court of appeals held that admission of the videotaped interview violated the defendant's Sixth Amendment right to confront her, and it also found that the error was not harmless. It similarly rejected the People's alternate claim, raised initially on appeal, that the defendant forfeited his right of confrontation by causing A.P.'s unavailability, and it reversed all of the defendant's convictions.

This court granted the People's petition for a writ of certiorari, challenging the court of appeals' rejection of their assertion of forfeiture by wrongdoing.

## II.

In *Reynolds v. United States,* the United States Supreme Court first indicated that certain conduct by a criminal defendant could result in the forfeiture of his Sixth Amendment confrontation protection. 98 U.S. 145, 158–59, 25 L.Ed. 244 (1878). The Court there indicated that although the Constitution grants a defendant a privilege of confrontation, "if he voluntarily keeps the witnesses away, he is in no condition to assert that his constitutional rights have been violated" by the admission of other evidence in "place of that which the defendant has kept away." *Id.* at 158. Until the Supreme Court's recent opinions in *Crawford v. Washington* and *Davis v. Washington,* —— U.S. ——, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), *Reynolds* represented the Court's only significant statement on the doctrine of forfeiture by wrongdoing.

In *Crawford* and *Davis,* the Supreme Court substantially rethought the guaranty of the Confrontation Clause and overruled *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). *See Whorton v.*

*Bockting,* —— U.S. ——, ——, 127 S.Ct. 1173, 1183, 167 L.Ed.2d 1 (2007). Instead of finding a general guaranty of reliability, the Court held that only a declarant of testimonial statements qualifies as a "witness" within the meaning of the Sixth Amendment, but that in all criminal prosecutions, the testimonial statements of witnesses absent from trial are admissible only where the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the witness. *Davis,* 126 S.Ct. at 2276–78. Both *Crawford* and *Davis,* however, also expressly acknowledged the continuing viability of the doctrine of forfeiture by wrongdoing. *Id.,* 126 S.Ct. at 2279–80; *Crawford,* 541 U.S. at 62, 124 S.Ct. 1354. While the Court's opinion in *Crawford* included little more than a reference to *Reynolds,* making clear that the doctrine survived the rejection of *Roberts, see Crawford,* 541 U.S. at 62, 124 S.Ct. 1354 ("[T]he rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds ...."); in *Davis,* the Court elaborated further. *See* 126 S.Ct. at 2279–80.

In addition to reaffirming the continued vitality of the doctrine, in *Davis* the Court alluded to its contours by characterizing it as having been codified by rule 804(b)(6) of the Federal Rules of Evidence. *Id.,* 126 S.Ct. at 2280. As an exception to the general exclusion of hearsay evidence, the federal rule permits the admission of the out-of-court statements of a declarant who is unavailable for trial, as expressly defined by the rule, *see* Fed.R.Evid. 804(a), whenever those statements are "offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." Whether or not the Court meant to hold that the federal hearsay exception and the Confrontation Clause forfeiture doctrine are precisely coterminous, its linkage of the two in this way, along with its other comments about the applicability of the doctrine, strongly implied that a defendant does not subject his right of confrontation to forfeiture, according to the doctrine of forfeiture by wrongdoing, except by conduct that was designed, at least in part, to deprive the

criminal justice system of evidence against him.

Beyond the Court's pointed use of the term "codifies," in reference to Fed.R.Evid. 804(b)(6), it made abundantly clear that the forfeiture doctrine, like the rule itself, serves to prevent criminal defendants from being rewarded for subverting the truth-seeking process. It characterized the doctrine as coming into play "[w]hen defendants seek to undermine the judicial process by procuring or coercing silence from witnesses and victims. . . ." *Davis*, 126 S.Ct. at 2280. Further, it described the defendant's duty, a violation of which would extinguish his confrontation right, as "refrain[ing] from acting in ways that destroy the integrity of the criminal-trial system." *Id.* In fact, the *Davis* Court's entire discussion of forfeiture by wrongdoing, which had not been raised or relied on below, came in direct response to the assertion that the crime of domestic violence requires greater flexibility in the use of testimonial evidence because such crimes are notoriously susceptible to intimidation or coercion of the victims as a way of keeping them from testifying at trial; and its self-professed purpose was to make clear that "*Crawford,* in overruling *Roberts,* did not destroy the ability of courts to protect the integrity of their proceedings." *Id.*

Perhaps most revealing with regard to its purpose, however, the Court acknowledged that the *Roberts* approach to the Confrontation Clause made recourse to the forfeiture doctrine less necessary, for the reason that "prosecutors could show the 'reliability' of *ex parte* statements more easily than they could show the defendant's procurement of the witness's absence." *Id.* Had the Court intended by "the defendant's procurement of the witness's absence" nothing more than traumatizing a domestic violence (or child sexual assault) victim enough to cause her to be retraumatized by having to testify at his trial, this statement could hardly make sense. Clearly it would not be easier to prove that the risk of retraumatization rendered the victim unavailable and that her prior statements were reliable, as required by *Roberts,* than to prove her unavailability from retraumatization alone.

Rather than finding that a complete forfeiture of a defendant's right to confront results from sexually abusive conduct impairing his child-victim's ability to communicate, the Supreme Court had previously held merely that the Confrontation Clause does not prohibit procedures like the use of one-way closed circuit television, when needed to protect a child sexual assault victim from the debilitating trauma caused by testifying in the presence of the defendant. *See Maryland v. Craig,* 497 U.S. 836, 855–57, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990); *but see id.* at 860, 110 S.Ct. 3157 (Scalia, J., dissenting) ("Seldom has this Court failed so conspicuously to sustain a categorical guarantee of the Constitution against the tide of prevailing current opinion."). In fact, the Supreme Court has never found a defendant to have forfeited his right to confront simply by committing a criminal act that results in a witness's unavailability to testify. *Cf. Motes v. United States,* 178 U.S. 458, 471–74, 20 S.Ct. 993, 44 L.Ed. 1150 (1900) (holding that the defendants did not forfeit their confrontation rights because "there was not the slightest ground in the evidence to suppose that [the witness] had absented himself from the trial at the instance, by the procurement, or with the assent of either of the accused"); *Reynolds,* 98 U.S. at 158–61 (defendant forfeited his right to confrontation when he secreted his alleged second wife to prevent her from being subpoenaed to appear at his polygamy trial).

Nevertheless, courts in other jurisdictions are divided on the question whether forfeiture requires a showing of the defendant's intent to prevent the declarant from testifying at trial. Opinions finding such a requirement include *People v. Stechly,* 225 Ill.2d 246, 312 Ill. Dec. 268, 288, 870 N.E.2d 333, 353, 2007 WL 1149969, at *13 (Ill. Apr.19, 2007); *State v. Wright,* 726 N.W.2d 464, 479 (Minn. 2007); *State v. Romero,* 141 N.M. 403, 156 P.3d 694, 701–03 (2007); *State v. Mechling,* 219 W.Va. 366, 633 S.E.2d 311, 325–26 (2006); *State v. Ivy,* 188 S.W.3d 132, 145–48 (Tenn. 2006); and *Commonwealth v. Edwards,* 444 Mass. 526, 830 N.E.2d 158, 170 (2005). Those with the opposite perspective include *People v. Giles,* 40 Cal.4th 833, 55 Cal.

Rptr.3d 133, 152 P.3d 433, 444 (2007); *Gonzalez v. State*, 195 S.W.3d 114, 125–26 (Tex. Crim.App.2006); and *State v. Jensen*, 727 N.W.2d 518, 535 (Wis.2007), although each involved the admissibility of prior testimonial statements of a homicide victim. Whether or not homicide prosecutions may be considered unique in this regard, *see, e.g., Stechly*, 870 N.E.2d at 352, 2007 WL 1149969, at *15 (leaving open the possibility of a "murder exception"), the clear consensus in non-murder cases is that the doctrine requires a showing of an intent on the part of the defendant to prevent the declarant from testifying at trial.

### III.

Much like its federal counterpart, Rule 802 of the Colorado Rules of Evidence bars the admission of hearsay except as otherwise permitted by rule or statute. Unlike the federal rules, however, this jurisdiction provides no general hearsay exception for statements offered against a party who has procured the unavailability of the declarant. The issue presented in this case therefore does not test whether a hearsay exception like Fed.R.Evid. 804(b)(6) is coextensive with the forfeiture by wrongdoing doctrine that remains applicable to the Sixth Amendment Confrontation Clause. Instead, the issue arises here only because out-of-court statements were admitted at the defendant's trial pursuant to a legislatively-created hearsay exception, thought to comply with the defendant's constitutional confrontation right before *Crawford* but now considered violative of that right, unless the right itself had been forfeited by the defendant's own wrongdoing.

■ The absent child-victim's videotaped interview in this case was admitted into evidence pursuant to section 13–25–129, C.R.S.

(2006),[2] an exception to the hearsay rule for certain out-of-court statements of child sexual assault victims, including some who are unavailable for trial only because their emotional or psychological health would be substantially impaired were they forced to testify. *See People v. Diefenderfer*, 784 P.2d 741, 750 (Colo.1989). To the extent that the statute allows for the admission of out-of-court testimonial statements without the defendant being afforded an opportunity to cross-examine the declarant, it is now clear that the statute violates the confrontation guaranty of the Sixth Amendment. *Crawford*, 541 U.S. at 68, 124 S.Ct. 1354; *People v. Vigil*, 127 P.3d 916, 929–30 (Colo.2006). In effect, the People assert, however, that a defendant has forfeited his right to confront any witness whose absence is caused by the defendant's own wrongdoing, regardless of his purpose; that a witness is absent if medically unavailable according to the standard recognized in *Diefenderfer*; and that acts of sexual assault committed against a child victim who becomes medically unavailable according to that standard are sufficiently the cause of her absence to work a forfeiture of the defendant's right to confront.

To find the forfeiture of a protection so integral to the truth-seeking process, quite apart from any design or attempt by the defendant to subvert that process, would not only divorce the forfeiture by wrongdoing doctrine from its very reason for existing but would emasculate the newly articulated cross-examination guaranty of the Confrontation Clause. It seems hardly conceivable that the Supreme Court would understand the Confrontation Clause to guarantee so absolutely a particular method of testing the reliability of testimony, *see Crawford*, 541

---

**2.** The statute provides, in relevant part:

(1) An out-of-court statement made by a child, ... describing any act of sexual contact, intrusion, or penetration, ... performed with, by, on, or in the presence of the child declarant, not otherwise admissible by a statute or court rule which provides an exception to the objection of hearsay, is admissible in evidence in any criminal ... proceeding[] in which a child is a victim of an unlawful sexual offense ... when the victim was less than fifteen years of age at the time of the commission of the offense ..., if:

(a) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(b) The child either:

(I) Testifies at the proceedings; or

(II) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement.

U.S. at 68, 124 S.Ct. 1354, and yet allow criminal defendants to be stripped of that guaranty so casually, and virtually by definition in entire classes of prosecutions. Nor does it seem likely that the Supreme Court would so emphatically criticize the practice of subjecting a defendant's confrontation right to the "open-ended balancing tests" that preceded its announcement of *Crawford*, 541 U.S. at 67–68, 124 S.Ct. 1354, only to similarly subject a defendant's entitlement to the privilege of confrontation to a judicial determination whether his own conduct could be considered, in some ill-defined way and by some unspecified degree of proximity, a cause of the declarant's absence from trial.

■ In light of its apparent lack of importance or development before *Crawford*, both the scope of the doctrine of forfeiture by wrongdoing and the way it will ultimately interface with the Confrontation Clause itself must be considered peculiarly the property of the Supreme Court. While it would be presumptuous to anticipate, any more than necessary, the Court's further development of the doctrine, it is clear enough from the Court's own post-*Crawford* comments that causation alone will be insufficient to work a forfeiture. To deprive a criminal defendant of the protection of the Confrontation Clause, his wrongful conduct must also be designed, at least in part, to subvert the criminal justice system by depriving that system of the evidence upon which it depends.

We have long held that on appeal a party may defend the judgment of the trial court on any ground supported by the record, whether or not that ground was relied upon or even contemplated by the trial court. *See People v. Quintana*, 882 P.2d 1366, 1371 (Colo.1994) (quoting *Dandridge v. Williams*, 397 U.S. 471, 475 n. 6, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)). Nevertheless, because the People failed to raise the doctrine of forfeiture by wrongdoing as a ground for admission, the trial court's findings focused solely on the child's unavailability rather than the defendant's role in causing her absence from the trial. The trial court found only that if the child were required to testify, she could be retraumatized; she could suffer enhanced anxiety, fear, and humiliation; and the "trauma bond" between her and the defendant could be renewed.

■ Even if these findings would be sufficient to establish the child's absence within the meaning of the forfeiture doctrine, and the defendant's conduct was sufficiently a cause of her absence, the trial court made no finding (and in fact there was no clear evidence) that wrongdoing by the defendant— because of, for example, the manner in which he chose his victim, the nature of his criminal acts against her, or subsequent threats he made to her—was intended, even in part, to subvert the criminal process by preventing or dissuading the victim from testifying at trial. Whether or not a finding of such intent would be sufficient in itself, in the absence of any finding beyond the risk of retraumatization of the victim, the record is inadequate to support a finding of forfeiture by wrongdoing.

### IV.

Because the People failed to prove that the defendant had any intent to prevent or dissuade the child from witnessing against him, the record fails to demonstrate that he forfeited his constitutional right to confront her. The judgment of the court of appeals is therefore affirmed.

Justice EID does not participate.