# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LUIS PHILLIP PONCE,
                    *Petitioner-Appellant,*

            v.

T. FELKER, Warden,
                    *Respondent-Appellee.*

No. 08-56218

D.C. No.
CV-07-02705-
ODW-RZ

OPINION

Appeal from the United States District Court
for the Central District of California
Otis D. Wright, District Judge, Presiding

Argued and Submitted
February 2, 2010—Pasadena, California

Filed May 24, 2010

Before: Betty B. Fletcher, Harry Pregerson, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Graber

**COUNSEL**

Zandra L. Lopez, Law Office of Zandra L. Lopez, San Diego, California, for the petitioner-appellant.

Stephanie C. Brenan, Deputy Attorney General, Office of the Attorney General of California, Los Angeles, California, for the respondent-appellee.

**OPINION**

GRABER, Circuit Judge:

Petitioner Luis Phillip Ponce was convicted in California state court of burglary and murder. In this appeal, he challenges the district court's denial of his habeas petition, arguing that the admission of certain testimony violated his rights under the Confrontation Clause. The California Court of Appeal affirmed the convictions, reasoning that the testimony fell within the "forfeiture by wrongdoing" exception to a defendant's right to confront the witnesses against him. The Supreme Court later ruled, in *Giles v. California*, 128 S. Ct. 2678, 2693 (2008), that the forfeiture exception applies only if a defendant specifically intended to prevent the witness from testifying. Thus, *Giles* would have controlled Petitioner's case had *Giles* been decided while his convictions were on direct appeal. However, in holding that forfeiture requires proof of a defendant's intent to prevent testimony, *Giles* established a new rule that does not apply retroactively. At the time of Petitioner's appeal, it was neither contrary to, nor an unreasonable application of, clearly established federal law the California appellate courts to rule that the forfeiture

n did not require proof of an intent to make the witness unavailable. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

In September 1998, Petitioner broke up with his girlfriend, Eva Gooch, and got back together with a former girlfriend, Christina Valencia. After Petitioner dumped Gooch, she threatened to tell the police about Petitioner's drug-dealing activities. She also threatened to report Valencia to the welfare authorities for living with a drug dealer, told Valencia that Petitioner had declared that he did not love Valencia, and told Valencia that Gooch had a video of herself and Petitioner having sex. Gooch's threats and taunts angered Petitioner.

At about 2 a.m. on December 6, 1998, Petitioner and a companion, Alex Carballo, encountered a former friend of Petitioner's at a gas station. Petitioner told his former friend that he had to "go kill some bitch." Gooch was bartending during the early morning hours of December 6, but her employer sent her home at about 2:30 a.m. because she complained of feeling ill. The following morning, Gooch failed to show up at her sister's house, as planned, to bake cookies with her niece. Gooch's sister called her repeatedly, but Gooch did not answer her phone.

Later that day, Petitioner and Carballo were in a car accident. A bystander who witnessed the accident testified that Petitioner had an injured hand wrapped in a white cloth covered in stains that looked like blood stains. The bystander asked Petitioner if he had hurt himself in the accident; Petitioner responded that he had injured his hand before the car accident. The bystander also noticed that Petitioner was wearing jeans that bore stains similar to those on the bandage on his hand.

On December 9, 1998, Gooch's body was discovered in her apartment. She had been stabbed approximately 30 times, and

a broken knife blade was embedded in her throat. An uncapped bleach bottle lay next to her body. DNA testing of blood found on the bleach bottle and on the kitchen counter of the apartment showed that the blood contained a mixture of Gooch's and Petitioner's blood. DNA testing also showed that saliva on two cigarette butts in the apartment had come from Carballo.

The State of California tried Petitioner for first-degree burglary and first-degree murder. His first trial resulted in a mistrial on the burglary count, and the California Court of Appeal reversed his murder conviction because of an erroneous jury instruction. At Petitioner's second trial, the prosecution introduced the evidence summarized above, and the court also permitted two witnesses to testify regarding Gooch's statements to them.[1]

Vikki Gibson, a private security guard in Gooch's apartment building, testified that she went to Gooch's apartment about two weeks before the murder because she heard loud banging noises. Gooch came to the door with a hammer in her hand and explained to Gibson that she was nailing boards over her balcony window to keep "Louie" out.

In addition, Bruce Richards, the apartment leasing agent, testified that Gooch called him on December 5 and asked him to arrange for the security guards to patrol her floor more frequently. Richards testified that Gooch said that she had received a phone call from Petitioner and that Petitioner had threatened, "I'm gonna kill you, bitch."

The jury convicted Petitioner of both burglary and murder. The court sentenced Petitioner to 25 years to life with the possibility of parole for the murder and four years for burglary. The California Court of Appeal affirmed Petitioner's convic-

---

[1]The trial court found that those two statements were not "testimonial" for Confrontation Clause purposes.

tions on January 25, 2006. The court held that the testimony by Gibson and Richards regarding Gooch's fears was proper because Petitioner had forfeited his Confrontation Clause rights by killing Gooch. The court also held that admission of the testimony, if erroneous, was harmless error because there was substantial evidence against Petitioner aside from the challenged testimony. The California Supreme Court summarily denied Petitioner's petition for review on April 12, 2006.

Petitioner filed a petition in federal court for a writ of habeas corpus, arguing, among other things, that the admission of the testimony regarding Gooch's statements violated his rights under the Confrontation Clause. On June 18, 2008, the district court denied the petition, concluding that the state court's decision to affirm Petitioner's conviction was neither contrary to, nor an unreasonable application of, clearly established federal law. The district court also ruled that the disputed statements were not testimonial, an issue not reached by the California Court of Appeal. On June 25, 2008, the Supreme Court decided *Giles*, 128 S. Ct. at 2688, in which the Court held that the forfeiture by wrongdoing exception applies only to those cases in which a defendant secured the unavailability of a witness with the intent to prevent the testimony. Contending that the record does not show that he had such an intent, Petitioner now appeals the district court's denial of his habeas petition.

## STANDARDS OF REVIEW

We review de novo the district court's denial of a petition for a writ of habeas corpus. *Lambert v. Blodgett*, 393 F.3d 943, 964 (9th Cir. 2004). Because Petitioner filed his habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we apply AEDPA's standards. Accordingly, habeas relief is warranted only if the state court's decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, or rested on an unreason-

able determination of facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). " '[C]learly established Federal law' . . . refers to the holdings, as opposed to the dicta, of [the Supreme Court]'s decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

## DISCUSSION

**[1]** The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The "witnesses" to which the Confrontation Clause refers include not only the witnesses testifying in court, but also certain out-of-court declarants. *Crawford v. Washington*, 541 U.S. 36, 50-51 (2004). For many years, the Supreme Court approved of the admission of unconfronted out-of-court statements if they bore adequate " 'indicia of reliability,' " and such indicia were presumed if "a firmly rooted hearsay exception" applied. *Ohio v. Roberts*, 448 U.S. 56, 66 (1980). However, in *Crawford*, the Court rejected the *Ohio v. Roberts* approach. "The *Roberts* test . . . replaces the constitutionally prescribed method of assessing reliability with a wholly foreign one." *Crawford*, 541 U.S. at 62. Accordingly, hearsay exception or not, the Confrontation Clause generally requires an opportunity for confrontation. But this right may be forfeited by a defendant's wrongdoing. *Id.*

Here, Gibson and Richards testified against Petitioner by recounting Gooch's statements about her fear of Petitioner and his threat to her. We assume, without deciding, that the statements were testimonial.[2] Gooch, the dead victim, was not

---

[2] Not all out-of-court statements are "testimonial," and the Confrontation Clause does not apply to non-testimonial statements. *Whorton v. Bockting*, 549 U.S. 406, 420 (2007). The Supreme Court has yet to define precisely what are "testimonial" and "non-testimonial" statements. *See Davis v.*

available for cross-examination. The California Court of Appeal held that Petitioner had forfeited his right to confront Gooch by murdering her.

**[2]** The Supreme Court had previously recognized the doctrine of forfeiture by wrongdoing, but the Court had not defined the precise parameters of the doctrine before the California Court of Appeal affirmed Petitioner's convictions and the California Supreme Court denied his petition for review in 2006. Approximately two years later, in *Giles*, the Supreme Court held that the forfeiture exception did not apply to every instance in which a defendant's wrongdoing prevented a witness from testifying. Rather, a defendant forfeits the right to confront a witness only when the defendant's conduct was "designed" to prevent testimony. *Giles*, 128 S. Ct. at 2688. The state courts here made no such finding. The crux of Petitioner's habeas petition, then, is that his convictions violated clearly established federal law and that *Giles* proves it.

## I.   Retroactivity

The State of California argues that Petitioner seeks to apply *Giles* retroactively to his convictions, in violation of *Teague v. Lane*, 489 U.S. 288 (1989). "When a State raises the issue

---

*Washington*, 547 U.S. 813, 822 (2006) ("Without attempting to produce an exhaustive classification of all conceivable statements—or even all conceivable statements in response to police interrogation—as either testimonial or nontestimonial, it suffices to decide the present cases to hold as follows . . . ."); *Crawford*, 541 U.S. at 68 ("We leave for another day any effort to spell out a comprehensive definition of 'testimonial.' "). The Supreme Court is currently considering *Michigan v. Bryant*, No. 09-150, in which it may provide us more guidance on this issue. The admission of the disputed testimony here could not have violated Petitioner's rights under the Confrontation Clause unless the statements were testimonial. However, we need not resolve whether the statements were actually testimonial, because we affirm the district court's denial of the habeas petition on other grounds. Accordingly, we assume for the sake of argument that the statements were testimonial.

of retroactivity, federal habeas courts *must* apply *Teague* before considering the merits of a claim." *Butler v. Curry*, 528 F.3d 624, 633 (9th Cir.), *cert. denied*, 129 S. Ct. 767 (2008) (internal quotation marks omitted). Thus, we turn first to the *Teague* question.

**[3]** For purposes of analyzing a habeas claim, *Teague* divided constitutional criminal procedure decisions into two categories: new rules and old rules. "[A]n old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review." *Whorton v. Bockting*, 549 U.S. 406, 416 (2007). "[A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government," or "if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301 (plurality opinion). "The explicit overruling of an earlier holding no doubt creates a new rule; it is more difficult, however, to determine whether [the Supreme Court] announce[s] a new rule when a decision extends the reasoning of [the Court's] prior cases." *Saffle v. Parks*, 494 U.S. 484, 488 (1990). In such circumstances, a court is to "determine whether a state court considering [the petitioner's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [the petitioner] seeks was required by the Constitution." *Id.* Thus, our task here is to determine whether the holding of *Giles*, which did not overrule any earlier Supreme Court case, was actually compelled by existing precedent.

**[4]** Petitioner contends that *Giles* restated an old rule because *Giles* relied on the Supreme Court's earlier opinions in *Reynolds v. United States*, 98 U.S. 145 (1879)*; Crawford*, 541 U.S. 36; and *Davis v. Washington*, 547 U.S. 813 (2006), as well as on founding-era common law. As we explain below, Petitioner is incorrect. *Reynolds*, 98 U.S. at 158, held that a defendant could forfeit the protections of the Confrontation Clause if the defendant wrongfully procured the unavaila-

bility of a witness. *Crawford*, 541 U.S. at 54, 62, held that the right of confrontation is subject to the exceptions to that right recognized at the time of the founding and confirmed that forfeiture by wrongdoing is a viable exception. *Davis*, 547 U.S. at 833, discussed the reason for the forfeiture exception and stated that the exception was codified in the Federal Rules of Evidence. None of those cases held that the exception required proof of a specific intent to prevent testimony, and none compelled that holding in *Giles*. Thus, we reject Petitioner's argument and hold that, under the *Teague* analysis, *Giles* promulgated a new rule.

The Supreme Court first addressed the forfeiture exception in *Reynolds*, 98 U.S. at 158. *Reynolds* involved a defendant, on trial for bigamy, who kept his second wife away from a deputy marshal seeking to serve a subpoena on her. *Id.* at 160. Because the second wife did not appear to testify, the trial court allowed the prosecution to read to the jury her testimony from another trial. *Id.* at 160-61. The Supreme Court held that the admission of this evidence did not violate the defendant's rights under the Confrontation Clause. *Id.* at 160. The Court stated:

> The Constitution gives the accused the right to a trial at which he should be confronted with the witnesses against him; but *if a witness is absent by his own wrongful procurement*, he cannot complain if competent evidence is admitted to supply the place of *that which he has kept away*. The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts. It grants him the privilege of being confronted with the witnesses against him; but *if he voluntarily keeps the witnesses away*, he cannot insist on his privilege. If, therefore, *when absent by his procurement*, their evidence is supplied in some lawful way, he is in no condition to assert that his constitutional rights have been violated.

*Id.* at 158 (emphases added).

The Supreme Court next referred to forfeiture by wrongdoing in *Crawford*, 541 U.S. at 62. *Crawford* did not involve the forfeiture exception directly. But the Court in *Crawford* stated that "the rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds; it does not purport to be an alternative means of determining reliability." *Id. Crawford* also instructed the courts that the Confrontation Clause "is most naturally read as a reference to the right of confrontation at common law, admitting only those exceptions established at the time of the founding." *Id.* at 54.

Finally, in Davis,[3] the Supreme Court again discussed the forfeiture exception. The Court explained the underlying rationale for the exception, stating:

> [W]hen *defendants seek to undermine the judicial process by procuring or coercing silence from witnesses and victims*, the Sixth Amendment does not require courts to acquiesce. While defendants have no duty to assist the State in proving their guilt, they do have the *duty to refrain from acting in ways that destroy the integrity of the criminal-trial system*. We reiterate what we said in *Crawford*: that "the rule of forfeiture by wrongdoing . . . extinguishes confrontation claims on essentially equitable grounds." That

---

[3]The *Teague* inquiry looks to the state of the law at the time that a petitioner's conviction became final. *Saffle*, 494 U.S. at 488. Here, Petitioner's conviction became final on July 11, 2006, when "a judgment of conviction ha[d] been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed." *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987). The Supreme Court decided *Davis* after the California Supreme Court denied review of the state appellate decision, but approximately three weeks before Petitioner's convictions became final. Thus, we consider *Davis* to determine whether, for purposes of Petitioner's case, *Giles* established a new rule.

is, *one who obtains the absence of a witness by wrongdoing* forfeits the constitutional right to confrontation.

547 U.S. at 833 (emphases added) (citations and emphasis omitted). Furthermore, the Court suggested that the Federal Rules of Evidence might describe the contours of the exception. It stated:

> We take no position on the standards necessary to demonstrate such forfeiture, but federal courts using *Federal Rule of Evidence 804(b)(6), which codifies the forfeiture doctrine*, have generally held the Government to the preponderance-of-the-evidence standard.

*Id.* (emphasis added). Federal Rule of Evidence 804(b)(6) provides a hearsay exception for "[a] statement offered against a party that has engaged or acquiesced in *wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness*." (Emphasis added.)

In *Giles*, the Supreme Court examined whether the forfeiture exception applies to cases in which there is no showing that a defendant's wrongdoing was intended specifically to secure the unavailability of a witness. The Court determined that the terms used to define the rule at common law "suggest that the exception applied only when the defendant engaged in conduct *designed* to prevent the witness from testifying." *Giles*, 128 S. Ct. at 2683. Furthermore, in early cases, "[t]he manner in which the rule was applied makes plain" this limitation. *Id.* at 2684. During the founding era, courts uniformly excluded testimony in cases—such as many murder prosecutions—in which the defendant had apparently caused a person to be absent, but without the specific intent to prevent testimony. *Id.* at 2684-86. Finally, the Court noted that "American courts never—prior to 1985—invoked forfeiture outside the context of deliberate witness tampering." *Id.* at

2687. Accordingly, despite the more recent cases in lower courts, the Supreme Court "decline[d] to approve an exception to the Confrontation Clause unheard of at the time of the founding or for 200 years thereafter." *Id.* at 2693.

*Reynolds* and *Crawford* are insufficient to dictate the rule that a defendant forfeits Confrontation Clause rights only if the intent of the wrongdoing was specifically to prevent testimony. Those cases describe the exception in general terms and establish merely that a defendant's deliberate wrongdoing may forfeit the right to confrontation. They do not themselves impose an intent requirement.

Nor does the Court's reference in *Crawford* to founding-era exceptions to the right of confrontation compel the rule announced in *Giles*. Although *Giles* relied heavily on common law cases, 128 S. Ct. at 2683-86, 2688, both Justice Souter's concurrence in *Giles* and Justice Breyer's dissent show that the common law cases and treatises can be read in different ways. *See id.* at 2694 (Souter, J. concurring) (concluding that "the early cases on the exception were not calibrated finely enough to answer the narrow question here"); *id.* at 2696-97, 2700-07 (Breyer, J., dissenting) (analyzing common law sources). Thus, *Reynolds* and *Crawford* are consistent with *Giles* but do not compel it.

*Davis* edges closer to the rule in *Giles* by discussing defendants who "seek to undermine the judicial process" and by describing Federal Rule of Evidence 804, which contains the intent requirement, as "codif[ying] the forfeiture doctrine." 547 U.S. at 833. But even *Davis* does not impose an intent requirement, and it still fails to compel the rule in *Giles*.

A new rule is one "over which reasonable jurists could disagree." *Caspari v. Bohlen*, 510 U.S. 383, 395 (1994) (brackets and internal quotation marks omitted). Thus, the existence of conflicting decisions among other courts before the Supreme Court's articulation of a rule, or of a dissent accompanying

that articulation, weighs against a conclusion that precedent compelled a decision. *See id.* (noting a conflict among federal and state courts); *Sawyer v. Smith*, 497 U.S. 227, 236-37 (1990) (noting the dissent accompanying a decision promulgating a rule). Here, both of those circumstances combine to demonstrate that *Giles* represented more than just the restatement of an old rule. There was a seven-to-three split among lower courts after *Davis* and before *Giles*, with the predominant view being that the forfeiture exception did *not* require an intent to prevent testimony. *Compare United States v. Garcia-Meza*, 403 F.3d 364, 370-71 (6th Cir. 2005) (holding that forfeiture does not require proof of intent); *People v. Giles*, 152 P.3d 433, 443 (Cal. 2007) (same), *vacated*, 128 S. Ct. at 2693; *State v. Moua Her*, 750 N.W.2d 258, 270-74 (Minn. 2008) (same), *vacated*, 129 S. Ct. 929 (2009); *State v. Sanchez*, 177 P.3d 444, 456 (Mont. 2008) (same); *State v. Mason*, 162 P.3d 396, 404 (Wash. 2007) (same); *State v. Mechling*, 633 S.E.2d 311, 326 (W.Va. 2006) (same); *and State v. Jensen*, 727 N.W.2d 518, 535 (Wis. 2007) (same), *with People v. Moreno*, 160 P.3d 242, 247 (Colo. 2007) (holding that forfeiture requires proof of intent); *People v. Stechly*, 870 N.E.2d 333, 353 (Ill. 2007) (same); *and State v. Romero*, 156 P.3d 694, 703 (N.M. 2007) (same). Furthermore, Justices Breyer, Stevens, and Kennedy dissented from the Court's opinion in *Giles*. 128 S. Ct. at 2695. Looking to the judgments of "reasonable jurists," *Caspari*, 510 U.S. at 395, and to our own assessment of what a state court would have understood *Davis* to require, we conclude that *Davis* did not compel the result in *Giles*.

Moreover, although *Giles* itself traced the intent requirement back to common law, it also acknowledged that post-1985 forfeiture cases and state evidence codes do not all require proof of intent. 128 S. Ct. at 2687-88 & n.2. *Giles* thus represented a departure from this more modern trend regarding the forfeiture exception. The holding of *Giles* is a new rule for *Teague* purposes.

**[5]** Even a new rule may be applied retroactively if the rule is substantive or if it is a watershed rule. *Teague*, 489 U.S. at 311. Neither exception applies here. *Giles* promulgated a rule of criminal procedure, not a substantive rule. Furthermore, *Giles* did not announce a watershed rule. The Supreme Court determined in *Whorton*, 549 U.S. at 421, that *Crawford* did not announce a watershed rule. *Crawford* represented a dramatic shift in Confrontation Clause law, overturning the "indicia of reliability" test that had been in use for decades. *Giles*, by contrast, clarified a subsidiary aspect of the rule announced by *Crawford*. If *Crawford* was not a watershed rule, then *Giles* cannot have been one either. We hold that *Giles* does not apply retroactively to state court convictions that became final before the Supreme Court issued *Giles*.

## II.   Clearly Established Federal Law

Petitioner argues that the state court's admission of Gibson and Richards' testimony regarding Gooch's statements was contrary to or an unreasonable application of clearly established federal law because it was clearly established that the forfeiture exception applied only if it could be shown that his purpose in killing Gooch was to prevent her from testifying. We are not persuaded.

**[6]** The "clearly established" inquiry is related to our examination of whether *Giles* constituted a new rule or an old rule under *Teague*. An "old rule" under *Teague* generally constitutes clearly established law for purposes of AEDPA. *Williams*, 529 U.S. at 412. But, because we determined that *Giles* announced a new rule, we must consider whether *Reynolds* and *Crawford* clearly established that the forfeiture exception requires proof of a defendant's intent to prevent testimony. We do not consider *Davis* here because the Supreme Court did not decide *Davis* until after the California Court of Appeal affirmed Petitioner's convictions and the California Supreme Court denied review of his appeal. *See Stokes v. Schriro*, 465 F.3d 397, 401-02 (9th Cir. 2006) (holding that we assess

clearly established law as of the date of the last reasoned state court decision).

**[7]** If Supreme Court cases "give no clear answer to the question presented," the state court's decision cannot be an unreasonable application of clearly established federal law. *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *accord Carey v. Musladin*, 549 U.S. 70, 77 (2006). On the other hand, "ignoring the fundamental principles established by [the Supreme Court's] most relevant precedents" may be contrary to or an unreasonable application of clearly established federal law. *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 258 (2007). Here, neither *Reynolds* nor *Crawford* clearly established the crucial principle such that the state court's decision was contrary to or an unreasonable application of federal law at the time.

The fundamental principle of *Reynolds* seems to be that a defendant forfeits the right to confrontation if a witness is "absent by his procurement." 98 U.S. at 158. This holding does not resolve the question of what constitutes "procurement." Even in *Giles*, the Supreme Court acknowledged that there are conflicting definitions of that term. 128 S. Ct. at 2683. Thus, *Reynolds* "give[s] no clear answer," *Wright*, 552 U.S. at 126, to the question presented in *Giles*.

Petitioner claims, however, that *Crawford* indirectly established the necessary rule. *Crawford* established the fundamental principle that the Confrontation Clause incorporates those exceptions recognized by founding-era common law. 541 U.S. at 54. *Giles* then held that the founding-era forfeiture exception contained the intent requirement and, indeed, that "[t]he manner in which the rule was applied makes plain" this limitation. 128 S. Ct. at 2684. But that statement falls short of proving that the scope of the forfeiture requirement at common law was clear enough—before *Giles*—to constitute "clearly established" federal law in 2006. *See id.* at 2694 (Souter, J., concurring) (concluding that "the early cases on

the exception were not calibrated finely enough to answer the narrow question here"). Indeed, the dissent in *Giles*, *id.* at 2696-97, 2700-07 (Breyer, J., dissenting), demonstrates that the common law cases and treatises can be read another way. *Giles* teaches that this alternative reading is wrong, but this does not mean that, before *Giles*, the alternative reading was an *unreasonable* application of *clearly established* law.

[8] Our conclusion that the scope of the forfeiture exception was "an open question in [Supreme Court] jurisprudence," *Carey*, 549 U.S. at 76, is also confirmed by the pronounced split among other courts on the scope of the exception after *Crawford* and before *Giles*. *See Boyd v. Newland*, 467 F.3d 1139, 1152 (9th Cir. 2006) ("[I]n the face of authority [from one state and three federal circuits] that is directly contrary to *Tighe*, and in the absence of explicit direction from the Supreme Court, we cannot hold that the California courts' use of Petitioner's juvenile adjudication as a sentencing enhancement was contrary to, or involved an unreasonable application of, Supreme Court precedent."); *see also Holland v. Anderson*, 583 F.3d 267, 282 (5th Cir. 2009) ("This clear split among federal—and state—courts . . . indicates that the Mississippi Supreme Court's denial of [the petitioner's] claim that he had such a right cannot possibly be 'contrary to or involve[ ] an unreasonable application of, clearly established Federal law.' "), *cert. denied*, 2010 WL 545503 (U.S. Apr. 19, 2010) (No. 09-9002); *Evenstad v. Carlson*, 470 F.3d 777, 783 (8th Cir. 2006) ("When the federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1).").

There was an eight-to-four split among courts after *Crawford* on whether forfeiture required proof of intent.[4] *Compare*

---

[4]The conflicting cases include two pre-*Davis* cases in addition to the post-*Davis* ones listed in the *Teague* analysis above. In the *Teague* analysis, the pre-*Davis* cases were not relevant to the question whether *Davis* would have compelled a state court to hold that the forfeiture by wrongdoing exception requires proof of a defendant's intent to prevent testimony. Here, by contrast, the cases after Crawford and before *Davis*—as well as the cases after *Davis*—confirm that the scope of the exception was an open question at the time of Petitioner's appeal and, indeed, until *Giles*.

*Garcia-Meza*, 403 F.3d at 370-71 (holding that forfeiture does not require proof of intent); *Giles*, 152 P.3d at 443 (same); *State v. Meeks*, 88 P.3d 789, 794 (Kan. 2004) (same), *overruled in part on another ground by State v. Davis*, 158 P.3d 317, 322 (Kan. 2006); *Moua Her*, 750 N.W.2d at 270-74 (same); *Sanchez*, 177 P.3d at 456 (same); *Mason*, 162 P.3d at 404 (same); *Mechling*, 633 S.E.2d at 326 (same); *and Jensen*, 727 N.W.2d at 535 (same), *with Moreno*, 160 P.3d at 247 (holding that forfeiture requires proof of intent); *Stechly*, 870 N.E.2d at 353 (same); *Commonwealth v. Edwards*, 830 N.E.2d 158, 170 (Mass. 2005) (same); *and Romero*, 156 P.3d at 703 (same). Those conflicting cases weigh very strongly against a conclusion that the intent requirement was clearly established before *Giles*.

**[9]** Before *Giles*, no holding from the Supreme Court required state courts to restrict the forfeiture exception to those cases in which a defendant intended to prevent a witness from testifying. *Cf. Carey*, 549 U.S. at 77 ("No holding of this Court required the California Court of Appeal to apply the test of *Williams* and *Flynn* to the spectator's conduct here."). Therefore, the state court's decision in Petitioner's case was neither contrary to, nor an unreasonable application of, clearly established federal law.

**[10]** Furthermore, even if the admission of the testimony was contrary to or an unreasonable application of clearly established federal law, the state court's decision that the error would have been harmless was not an unreasonable determination. *See Fry v. Pliler*, 551 U.S. 112, 119 (2007) ("[A] federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable."). There was weighty evidence against Petitioner independent of the unconfronted statements, including testimony by Petitioner's former friend that Petitioner said he was going to "go kill some bitch"; testimony that, on the day of the murder, Petitioner's hand was injured other than in the car accident; and DNA evidence of Petitioner's blood in Gooch's kitchen and

on the bleach bottle next to her body. In light of this evidence, it was not unreasonable for the state courts to determine that the additional testimony about Gooch's fear of Petitioner and his threat did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) (internal quotation marks omitted).

For the foregoing reasons, the district court properly denied the habeas petition.

AFFIRMED.